RECEIVED
SEP 11 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | DOCKET NO. 2:11CR00085-001 |
| VS. | : | JUDGE MINALDI |
| FRANCISCO JAVIER CAMACHO | : | MAGISTRATE JUDGE KAY |

MEMORANDUM RULING

Presently before the court are objections filed by the defendant, Francisco Javier Camacho, to the Presentence Report ("PSR") prepared by the Probation Department.

In his first objection, Camacho objects to ¶¶ 2, 19 and 20, as each of these paragraphs mention the discharge of a firearm, which discharge has not been proven. This objection has no impact on the guideline range and therefore does not require a ruling by the court.

The next objection disputes several factual assertions contained in ¶¶26-30 of the PSR, and the corresponding enhancement for obstruction of justice. This court has denied this objection in the past, but the defendant re-urges the objection based upon the sentencing hearing that was held on August 28, 2014.

USSG §3C1.1 states that "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels." Application Note 4(A) and 4(C), respectively, specifically state that

"threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so" and "producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding" both constitute obstruction.

This court specifically adopts the PSR. It is the defendant's burden to rebut the information contained in the PSR. *U.S. v. Havens,* 331 Fed.App'x. 280, 282 (5th Cir. 2009); *United States v. Solis,* 299 F.3d 420, 455 (5th Cir.2002). "Mere objections do not suffice as competent rebuttal evidence." *Id.* (quotations and citation omitted). However, "the PSR is not evidence. If the defendant objects to any of the factual allegations contained therein on an issue on which the government has the burden of proof, such as enhancing factors, the government must present evidence at the sentencing hearing to prove the existence of the disputed facts." *United States v. Mann,* 701 F.3d 274, 310 ( 8th Cir. 2012); *United States v. Poor Bear,* 359 F.3d 1038, 1041 (8th Cir.2004) (internal citation omitted).

As indicated in ¶26 of the PSR, during a detention hearing on April 5, 2011, before U.S. Magistrate Judge Kathleen Kay, in Lake Charles, Louisiana, the defendant, through defense counsel, filed into the record of this case an affidavit signed by co-defendant Cruz Martinez-Encinas purporting to exonerate the defendant from any wrong-doing in this offense. Martinez-Encinas was subsequently interviewed by investigating agents and stated that he signed the affidavit only after he was approached by Camacho about signing the affidavit and felt threatened by Camacho's comments. Martinez-Encinas also advised that his girlfriend was contacted in an attempt to get Martinez-Encinas to sign the affidavit and felt so threatened by Camacho that she had since relocated. In addition to this statement given to investigating agents, the above information

concerning the coerced affidavit was included in the Stipulated Factual Basis for Guilty Plea included in the Plea Agreement for Cruz Martinez-Encinas, filed into the record of this case on September 1, 2011.

¶ 27 sets forth the details of a statement provided to investigating agents from Ulises Cedillo-Barragan, who was incarcerated at the Calcasieu Correctional Center with Cruz Martinez-Encinas and Francisco Camacho, and signed as a witness on the above mentioned affidavit. In his statement, Cedillo-Barragan related that he met Camacho in the recreation yard of the Calcasieu Correctional Center, and that Camacho wrote the affidavit and gave it to Cedillo-Barragan and asked him to have Martinez-Encinas sign it. After some coercion, Martinez-Encinas signed the affidavit and Cedillo-Barragan returned it to Camacho. He signed the affidavit as a witness in exchange for commissary items.

¶ 28 summarizes an incident report prepared by a Calcasieu Parish Sheriff's Office deputy based on information received from another inmate of the Calcasieu Correctional Center on April 21, 2011. On that date, inmate Luke Morgan related that Camacho had offered him a car if he would "shank" Cruz Martinez-Encinas. Morgan refused to do so. Morgan advised that, as a result, he now feared for his life and was placed in an isolation cell for his protection. ¶29 sets forth a subsequent statement given to investigating agents by Morgan concerning this incident.

The burden is on the Government to introduce evidence to prove the accounts summarized in the PSR. If the Government does so, the enhancement for obstruction of justice, pursuant to Application Notes 4(A) and (C) in the Commentary to USSG §3C1.1 is warranted. This evidence would prove that the defendant threatened, intimidated and influenced his co-defendant and produced a false document in a judicial proceeding. The court will postpone ruling upon this

objection until the Government has the opportunity to present the evidence discussed herein.

The defendant's third objection argues that he is entitled to an adjustment for acceptance of responsibility. Citing Application Note 4 to U.S.S.G. §3C1.1,¶31 he states that he has received an adjustment for obstruction of justice and that Probation asserts that he does not qualify for a reduction for acceptance of responsibility because of the obstruction of justice. For the same reasons provided with respect his objections to ¶¶ 26-30, Camacho objects to ¶31 of the PSR.

As indicated in ¶ 31 of the PSR, the defendant did not receive a reduction for acceptance of responsibility because he received an enhancement for obstruction of justice. Application Note 4 in the Commentary to USSG §3E1.1 provides that conduct resulting in an enhancement under §3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. Application Note 4 in the Commentary to USSG §3E1.1 provides that conduct resulting in an enhancement under §3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§3C1.1 and 3E1.1 may apply.

The burden of proof is on Camacho to set forth any circumstance to show that his case is an of the extraordinary ones in which both §§ 3C1.1 and 3E1.1 may apply. *United States v. Ford,* 2014 WL 1724719 *(5th Cir. 2014); United States v. Juarez–Duarte,* 513 F.3d 204, 211 (5th Cir.2008) (internal quotation marks and citation omitted). A guilty plea does not entitle a defendant to a reduction as a matter of right, and evidence of the defendant's acceptance of responsibility may be outweighed by conduct inconsistent with such a claim of responsibility. § 3E1.1(a), comment. (n.3). Further, "[c]onduct resulting in an enhancement [for obstruction of justice] under § 3C1.1 ...

ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." § 3E1.1, comment. (n.4). The defendant has the burden of proving entitlement to the reduction. *United States v. Perez*, 558 Fed.App'x. 432 *(5th Cir. 2014); United States v. Thomas*, 120 F.3d 564, 574–75 (5th Cir.1997). The court has no trouble determining that Camacho has not met his burden. The acts of the defendant described above are not consistent with one who was accepted responsibility for his criminal acts. This objection is overruled.

Camacho objects next to ¶54 of the PSR. Camacho argues that ¶54 of the PSR, specifically the summary, indicates that 'Each charge in the Bill of Information alleged that the above offenses were committed for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further and assist in criminal conduct by gang member.' However, the summary fails to mention that following a preliminary hearing in this case the gang related enhancements associated with all of the charges in the bill of information were dismissed. Camacho objects to the factual accuracy of the information provided in ¶ 54 and requests clarification of same.

Although this does not require a ruling by the court, the court notes that Probation reviewed the record and amended the PSR to reflect that allegations of gang related activity has been stricken from the record.

Camacho objects to ¶¶55 and 56, describing two separate convictions which resulted in one criminal history point being assessed. Camacho was sentenced for both of the offenses described in ¶¶ 55 and 56 on the same day - August 1, 2003. Application Note 2 to U.S.S.G. §4A1.2(a) states in pertinent part:

"Prior sentences always are counted separately if the sentences were imposed for

offenses that were separated by an intervening arrest (i.e. the defendant is arrested for the first offense prior to committing the second offense.) If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence."

Camacho argues that there is no indication in the PSR that he was arrested for the offense provided in ¶55 prior to committing the offense provided in ¶56, or vice versa. Likewise, ¶ 55 lists an arrest date of August 26, 2002 and ¶ 56 lists 'unknown' in place of an arrest date. Thus, based on Application Note 2 to U.S.S.G. §4A1.2(a), Camacho objects to the criminal history point allotted in ¶ 56 of the report.

After further review of the available records, the Probation Office determined that an error was made in the reporting of the sentences imposed in both ¶¶ 55 and 56, which resulted in an error in the assignment of the criminal history points for each conviction. However, this correction did not result in a change to the total criminal history points or Criminal History Category as originally calculated.

Following a review of court documents received for the convictions listed in ¶¶ 55 and 56 Probation determined that the defendant was sentenced on the same date on each of these charges, and was indeed sentenced to a term of imprisonment of 12 years for the conviction listed in ¶ 55, and 8 months imprisonment on the conviction listed in ¶ 56, to run consecutively to each other. However, these sentences of imprisonment were suspended and he was placed on five (5) years probation. Further research of the court records revealed that the defendant was also sentenced on each charge to serve a term of twelve (12) months jail on each charge, concurrently, as a condition of his probation, which jail term was not suspended. Therefore, pursuant to USSG §4A1.1(b), these

convictions should have been assigned two (2) criminal history points as they resulted in a term of imprisonment of at least sixty (60) days that was not suspended. However, Probation concurred with defense counsel that only one of these convictions should have been assigned criminal history points as he was sentenced on the same date on each charge and there was no intervening arrest as defined by the sentencing guidelines.

Therefore, the PSR was revised to assign two (2) criminal history points to the conviction listed in ¶ 55, as this was the longest term of imprisonment, and zero (0) criminal history points are assigned to the conviction. Accordingly, the defendant's objection is overruled.

In his next objection, Camacho disputes the information contained in ¶59 of the PSR. ¶59 of the report, under the section 'Other Arrests', indicates that on May 31, 1992, Camacho was arrested by the Santa Rosa Sheriff's Office in California and charged with a crime. With respect to the disposition of the case, the report indicates 'none found.' Mr. Camacho informs his counsel that he was acquitted following a trial on the charge(s) associated with ¶ 59 of the report. Camacho objects to the factual accuracy of the information provided in ¶59 and requests clarification of the disposition of the case in the report. In the alternative, Mr. Camacho objects to disclosure of this information under Rule 32(d)(3)(c) which, again, provides that the PSR *must* exclude 'any other information that, if disclosed, might result in physical or other harm to the defendant or others.' Should Camacho's report not be amended to reflect his acquittal of the charge listed in ¶ 59, Camacho believes such could result in physical harm being done to him while under incarceration.

Camacho has the burden of disputing the facts stated in the PSR. Probation attempted to obtain information from the California court to no avail. Camacho can produce proof of his acquittal if he wants this information reflected in the record. Camacho states that he believes that this charge

being listed in his PSR will result in harm to him while incarcerated. Camacho's "belief" is not sufficient to alter the PSR. This court has heard repeatedly from the defendant and his attorneys through the past several years of all the facts and events that he "believes" will cause him harm while incarcerated. This objection does not require a ruling by the court as it does not impact the guidelines calculations.

Camacho next objects to ¶93 of the PSR in which Probation states that it is unaware of any basis for a departure. Pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departure. *United States v. Carty*, 264 F.3d 191, *see also United States v. Pressley*, 345 F.ed 1205, 2003 U.S. App. LEXIS 19178. The defendant alleges that the facts surrounding his pretrial confinement are extraordinary, both in length of presentence confinement and in the conditions of said confinement. As was the case in *Pressley*, Mr. Camacho has spent the vast majority of his presentence confinement in isolation and/or solitary confinement. In fact, Mr. Camacho has spent approximately the last three (3) years in isolation at the Calcasieu Parish Correctional Center. Camacho argues that, both mentally and physically, the conditions of his pretrial confinement have been extremely difficult to endure. While this may be true, the delay in sentencing and being assigned to a federal facility was caused, for the most part, by Camacho's legal maneuvering.

Pretrial confinement is not a factor listed in the sentencing guidelines as a basis for departure, nor is it listed as a 18 U.S.C. § 3553(a) factor. Information received from Assistant Warden Charles Lavergne, Calcasieu Correctional Center, indicated that Mr. Camacho has been held in administrative segregation at that facility since April 9, 2012, due to security risks. Administrative segregation means that he is not housed in the general population, but is in a one-man cell. The

defendant can make regular phone calls, receives regular visitation, and receives a recreation period every day if conditions permit, but no less than three times a week. The court does not find this to be a reasonable basis for a downward departure.

Mr. Camacho also argues that he qualifies for a downward departure under U.S.S.G. §5K1.10 which provides at the outset 'If the victim's wrongful conduct contributed significantly to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense.' ¶16 of the report indicates that 'The victim, Dustin Moseley, initially told deputies that he was buying a car from Camacho and Martinez-Encinas, but subsequently admitted that he was intending to purchase 20 pound of marijuana from them at a price of $7,500.00.' ¶17 then states as follows:

> 'Mosely also related that he has been involved in marijuana trafficking for an extended period and normally obtains his merchandise in Houston, Texas. The purchase money taken in the robbery was drug proceeds from earlier drug trafficking. Moseley advised that he had met Camacho at an exotic club in Houston, and had there negotiated the delivery of marijuana to his residence in Roanoke, Louisiana.'

As to who initiated the car chase, ¶18 states 'Moseley then chased Camacho and Martinez-Encinas in his car until he caught them on Interstate 10 and ran them off the road.'

The probation office does not agree that any conduct of the victim led to the defendant's actions in this case. According to the PSR, the defendant pled guilty to the offenses of Interference with Commerce by Robbery, and Use and Carrying by Brandishing a Firearm During a Crime of Violence. In this case, the defendant and victim arranged a meeting in which the victim was to purchase a quantity of marijuana from the defendant. The defendant then traveled from Houston, Texas, to the home of the victim in Roanoke, Louisiana, with a duffle bag filled with wrapped-up T-shirts, purported to be marijuana, with intention of robbing the victim. Upon arrival at the

victim's residence, the defendant, after receiving the money from the victim for the purported marijuana, brandished a firearm and instructed his co-defendant to restrain the victim and his girlfriend. After the defendant and his co-defendant left the residence with the money, the victim and his girlfriend were able to free themselves. The victim then pursued the defendant and his co-defendant in a car. During that chase, the defendant again brandished a firearm in an apparent attempt to scare the victim into abandoning the chase. The victim's actions may have contributed to the brandishing of the firearm during the car chase, but the probation office fails to see how any actions by the victim contributed to the initial robbery and brandishing of a firearm. The court finds that a downward departure under §5K2.10 is not be warranted in this case.

Lastly, Camacho objects to the Government's alleged certainklyfailure to honor the plea agreement in this case specifically as it relates to his being denied the opportunity to cooperate with the Government and earn credit for same. As part of its plea agreement with Camacho, the Government promised to inform the Court of any assistance provided by the defendant at or before the time of sentencing. Likewise, the plea agreement states the Government 'may, but shall not be required to, make a motion requesting the Court to depart from the sentencing range called for by the guidelines in the event he [Camacho] provides 'substantial assistance.' The plea agreement also expressly required Camacho agree to cooperate fully and truthfully with the investigation into his case as well as any other criminal matter about which he had knowledge. The defendant argues that, from the working of the plea agreement in this case, "it is clear Camacho's cooperation was contemplated between the parties." Nevertheless, the Government has failed to honor its agreement with Camacho. In any event, Camacho objects to same and intends to produce testimonial evidence at his sentencing hearing regarding his attempts to try and cooperate with the Government and the

Government's actions in response.

This objection does not impact the calculation of the sentencing guidelines and will not require a ruling by the Court.

Lake Charles, Louisiana, this 11 day of September, 2014.

                                                PATRICIA MINALDI
                                                UNITED STATES DISTRICT JUDGE