UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 2:11-CR-00085-01** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **FRANCISCO JAVIER CAMACHO (01)** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a second Motion for Compassionate Release or Release to Home Confinement [doc. 298] filed by defendant Francisco Javier Camacho. The government opposes the motion. Doc. 302.

### I.
#### BACKGROUND

Following his conviction of one count of interfering with commerce by robbery, a violation of 18 U.S.C. § 1951, and one count of carrying a firearm during a crime of violence, a violation of 18 U.S.C. § 924(c), Mr. Camacho was sentenced in this court on September 11, 2014, to a combined term of 154 months' imprisonment. Doc. 254. This sentence was at the low end of the Guideline range, which provided for a 70 to 87 month term on the robbery conviction and a consecutive 84 month term on the firearm conviction. Doc. 261. Mr. Camacho did not appeal his conviction or sentence and his motion to vacate under 28 U.S.C. § 2255 was denied by the court on December 4, 2018. Doc. 285. According to BOP records, his projected release date is February 20, 2022, and he will be eligible for home confinement on August 20, 2021. Doc. 289, att. 1, p. 4.

Mr. Camacho is now incarcerated at the Federal Correctional Institute at Butner, North Carolina. He moved to reduce or modify his sentence under 18 U.S.C. § 3582(c)(1)(A), seeking either early release or release to home confinement based on his fear of contracting COVID-19. Doc. 289. The government opposed the motion on the grounds that he has not exhausted his administrative remedies, and the court rejected the petition on that same basis. Docs. 293, 295. Mr. Camacho now files a second motion for compassionate release, showing that the BOP denied his request. Doc. 298. The government opposes the motion on the merits. Doc. 302.

## II.
## LAW & APPLICATION

A sentence of imprisonment may only be modified by the district court in limited circumstances. *Dillon v. United States*, 560 U.S. 817, 825 (2010). The court may reduce a term of imprisonment for "extraordinary and compelling reasons" so long as they are "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Following passage of the First Step Act in 2018, inmates may use this provision to directly petition the court for compassionate release. The court may only act, however, "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request . . . whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, the inmate is required to exhaust his administrative remedies with the BOP before bringing such a request to the court and exhaustion is a jurisdictional prerequisite

for the court's ability to grant relief. *See, e.g.*, *United States v. Johnson*, 2020 WL 1663360, at \*3–\*6 (D. Md. Apr. 3, 2020); *United States v. Koons*, 2020 WL 1940570 (W.D. La. Apr. 21, 2020).

Mr. Camacho shows that he filed a request for compassionate release with the warden at FCI Butner, citing his medical conditions of obesity and hypertension and his fear of contracting COVID-19. Doc. 298, att. 1, p. 12. He also shows that this request was denied on June 4, 2020. Specifically, the warden stated:

> At this time, you do not meet the guidelines outlined in Program Statement 5050.50, <u>Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. § 3582(c)(1)(a) and 4205(g)</u>, Section 3b., Debilitated Medical Condition. . . . Although you have medical conditions, you do not have a debilitating medical condition. You are medically stable and independent in your activities of daily living. Accordingly, your RIS request is denied at this time.
> At present, you are receiving appropriate medical care and treatment by Health Services Staff. We are committed to providing you with the necessary and appropriate care for your medical needs.

*Id.* at 11. Accordingly, the request is exhausted and the court may now consider Mr. Camacho's motion.

In support of his motion, Mr. Camacho attaches health services records from 2019 that confirm his conditions of obesity and hypertension. *Id.* at 2–9. The government notes that the conditions are managed with his care through the BOP and that managed medical conditions generally do not provide a basis for compassionate release under the relevant program statements. Doc. 302, pp. 5–6; *see* BOP Prog. Statement 5050.50. It acknowledges, however, that this statement and other case law cited in reference to chronic conditions do not reflect present concerns about the COVID-19 pandemic. Several courts

have found that the pandemic may present an extraordinary and compelling circumstance warranting compassionate release, particularly in the case of a defendant who is at risk for severe illness by reason of preexisting medical conditions. *See United States v. Mazur*, __ F.Supp.3d __, 2020 WL 2113613, at *4 (E.D. La. May 4, 2020) (collecting cases); *see also United States v. Furlow*, 2020 WL 3967719 (W.D. La. Jul. 13, 2020); *United States v. Malone*, 2020 WL 3065905 (W.D. La. June 9, 2020).

As another division of this court recently noted, FCI Butner has been battling an active coronavirus outbreak for some time now. *Malone*, 2020 WL 3065905 at *6. All four facilities at that institution report active cases among inmates, with two inmate cases and two staff cases currently reported at the facility where Mr. Camacho is housed. *See* Federal Bureau of Prisons, *COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited August 3, 2020). Another facility within that same complex, however, currently has 75 active inmate cases. *Id.* Additionally, the CDC reports that people with a body mass index of 30 or higher are at an increased risk of severe illness from the virus. *See* Centers for Disease Control and Prevention, People Who Are at Increased Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited July 24, 2020). Meanwhile, those with hypertension may also be at an increased risk. *Id.* The government concedes that obesity is a risk factor and that Mr. Camacho's increased risk of severe illness under the pandemic conditions might create extraordinary circumstances justifying release. Doc. 302, pp. 6–7. Nevertheless, it maintains that the motion should be denied due to Mr. Camacho's criminal history and potential danger to others in the community.

Even where the defendant has demonstrated that he is eligible for compassionate relief based on extraordinary circumstances, the court is also required to "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." 18 U.S.C. § 3582(c)(1)(A). Section 3553(a) contains factors that the court must consider in determining the length of a sentence, including (1) to reflect the seriousness of the offense, (2) to afford adequate deterrence of criminal conduct, and (3) to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2).

With about one and a half years until his release, Mr. Camacho has little more than ten percent remaining of his original 154-month sentence. As the government points out, however, the offense that earned this sentence involved an armed robbery during a staged drug deal in which two victims were tied up. Doc. 253 (PSI), ¶¶ 16–17. One victim stated that Mr. Camacho pointed a gun at his head while another stated that he waved the gun around during the incident but did not point it at her. *Id.* at ¶¶ 22, 24. When one of the victims escaped and pursued Mr. Camacho and his codefendant in a vehicle, Mr. Camacho brandished a firearm from the window of his car. *Id.* at ¶ 20. A spent cartridge was recovered from the interior of Camacho's vehicle, which was matched to his weapon, and a projectile ricochet groove on the side of the vehicle indicated that a bullet was fired from the passenger side window. *Id.*

The record shows that Mr. Camacho was 39 years old at the time of the offense and had a lengthy criminal history, including convictions for burglary, possession of a sawed-off shotgun (in connection with a gang-related drive-by shooting), robbery, and possession of drug paraphernalia; and multiple parole violations. *Id.* at ¶¶ 51–57. Additionally, while

in pretrial custody Mr. Camacho threatened his codefendant in an effort to have him sign an affidavit denying Mr. Camacho's involvement in the crime. *Id.* at ¶ 26. Other inmates asserted that Mr. Camacho attempted to have his codefendant shanked at the jail after he would not sign the affidavit. *Id.* at ¶¶ 27–29.

In support of his original motion, however, Mr. Camacho submitted records showing that he has earned substantial good conduct time. *See* doc. 289, att. 1, p. 6. He shows that he has completed coursework in several areas through the BOP and asserts that he has had no violent incident reports throughout his incarceration. Doc. 289, p. 2; doc. 289, att. 1, pp. 9–19. He was classified as a medium recidivism risk in December 2019, and his reentry programming paperwork from around the same time reflects a "clear conduct since last review" as well as "[maintenance] of family/community ties by calling/writing at least twice/month." Doc. 289, att. 1, pp. 7–8.

Based on these factors, the government argues that the original sentence was adequately calculated to reflect the seriousness of the offense and that Mr. Camacho's history and offense characteristics necessitate he serve his full sentence in the interest of protecting the public. Having considered the relevant factors, however, the court finds that Mr. Camacho has made a sufficient demonstration of rehabilitation through his conduct while incarcerated. In light of the substantial amount of time already served and the good conduct he has displayed while incarcerated, the factors set forth in § 3553(a) do not override the court's determination that the dangers posed by the COVID-19 pandemic serve as a basis for reducing Mr. Camacho's sentence. In order to address the recidivism

risk, however, the court will order that the defendant be initially released to a halfway house and serve the first six months of his supervised release there.

### III.
#### CONCLUSION

For the reasons stated above the Motion for Compassionate Release [doc. 298] will be **GRANTED**, subject to special conditions of supervised release set forth in the accompanying order.

**THUS DONE AND SIGNED** in Chambers on this 4th day of August, 2020.

_____
**JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE**